# United States District Court
## for the Northern District of Oklahoma

Case No. 24-cr-224-JDR

UNITED STATES OF AMERICA,

*Plaintiff*,

*versus*

MARCUS ALEXANDER VASQUEZ,

*Defendant*.

## AMENDED OPINION AND ORDER

In the early morning hours of February 11, 2024, Officer Austin Seabolt of the Broken Arrow Police Department approached a car that was legally parked with its lights on. He opened the door and asked Defendant Marcus Vasquez to get out of the car. Mr. Vasquez did so, and he was arrested for obstruction soon afterward. Officer Seabolt and other officers searched the car and found drugs and a gun in the back of the car. Mr. Vasquez now moves to suppress all evidence resulting from this search. Dkt. 23. For the following reasons, Mr. Vasquez's motion to suppress is GRANTED.[1]

I.

The following facts are drawn from the video of Officer Seabolt's body worn camera [Dkt. 25] and the testimony presented at the evidentiary hearing held on September 17, 2024 [Dkt. 33]. Officer Seabolt was on patrol around 3:00 in the morning when he noticed a car parked with its headlights and

[1] The Opinion and Order entered September 25, 2024 [Dkt. 29], is hereby withdrawn and this Amended Opinion and Order is entered in its place.

dome light on. Dkt. 33 at 7:3-15. The car was legally parked in a residential area. *Id.* at 15:14-20. Approximately twenty minutes later he drove by again, saw that the lights were still on, and decided to stop. *Id.* at 8:5-21. Officer Seabolt testified that there had been a recent uptick in auto burglaries in Broken Arrow and that the thieves usually used dome lights when committing these thefts. *Id.* at 8:22-9:2. Officer Seabolt had no reason to believe that the parked car was connected to any type of illegal activity when he drove by; nobody had reported criminal activity in or around the car. *Id.* at 16:24-17:13. Nonetheless, he stopped to perform a vehicle check.

After parking behind the car, Officer Seabolt turned on his body worn camera and walked toward the driver's side of the car, shining his flashlight through the windows. Dkt. 25 (00:18-00:24). When he approached the backseat window, Officer Seabolt noticed a person in the driver's seat who was hunched over and "appeared to be asleep or unconscious." *Id.* (00:26-00:28); Dkt. 33 at 9:8-10, 24:17-25. He saw a glass pipe in the center console but did not smell any type of narcotics from outside the car. Dkt. 33 at 10:1-10, 23:4-13. Officer Seabolt then approached the driver's window and radioed for a backup officer. *Id.* (00:28-00:38). While waiting for the backup officer, he briefly pointed his flashlight in the car, but otherwise did not try to get Mr. Vasquez's attention. *Id.* (00:38-02:04); Dkt. 33 at 10:17-21. Once the backup officer arrived, Officer Seabolt knocked on the driver's window. *Id.* (02:08). Only a few seconds after knocking, Officer Seabolt opened the car door and announced himself. *Id.* (02:11-02:14).

Mr. Vasquez told Officer Seabolt that he was "just over here," and Officer Seabolt asked Mr. Vasquez to step out of the car. Dkt. 25 (02:14-02:24). Mr. Vasquez responded that he was parked in front of his house. *Id.* (02:22); Dkt. 33 at 11:20-25. Officer Seabolt again asked Mr. Vasquez to get out of the car and stated that he had been knocking on the car window and a pipe was visible in the center console. *Id.* (02:24-02:32). Officer Seabolt then instructed Mr. Vasquez to step to the back of the car. *Id.* (02:32). As Mr.

Vasquez got out of the car, he lifted his arm to shut the door behind him and Officer Seabolt grabbed his wrist, "essentially pull[ing] him out of the car." *Id.* (02:32-02:34); Dkt. 33 at 11:20-25. Mr. Vasquez asked Officer Seabolt why he was being told to go to the back of the vehicle, and Officer Seabolt did not respond. *Id.* (02:34-02:36). Officer Seabolt testified that Mr. Vasquez then began to walk quickly towards the houses and reached for his waistband, so Officer Seabolt and the backup officer tackled Mr. Vasquez to the ground.[2] Dkt. 33 at 12:5-21. Once Mr. Vasquez was brought back to his feet, Officer Seabolt stated that he had been knocking on the car window for five minutes before opening the door, which Mr. Vasquez denied. *Id.* (03:54-04:00).

The officers led Mr. Vasquez to the patrol car. Dkt. 25 (04:06-04:30). When Mr. Vasquez asked if he was being detained, an officer told him that he was being arrested. *Id.* (04:35-04:38).[3] Officer Seabolt asked Mr. Vasquez why he was in the car. Mr. Vasquez responded that he was in front of his "Pop's" house and that he had come out to the car to get his phone charger and was about to go back into the house. *Id.* (05:00-05:22). Another officer asked Mr. Vasquez why he was asleep in the car, and Mr. Vasquez denied that he was sleeping and answered that he had "just put [his] head down for a second." *Id.* (05:22-05:26).

Officer Seabolt told Mr. Vasquez that he saw a pipe in the car and was going to search the entire vehicle. Dkt. 25 (05:33-05:44). Mr. Vasquez did not consent to the search. *Id.* (05:44-05:46). Officer Seabolt responded that he did not need Mr. Vasquez's consent because "[he] came up to the vehicle, tried to get [Mr. Vasquez's] attention, and [Mr. Vasquez] was unresponsive." *Id.* (05:50-05:56). Mr. Vasquez pointed out that he responded immediately when he heard Officer Seabolt's first and only knock. *Id.* (05:56-6:04). Officer

---

[2] No weapons, drugs, or drug paraphernalia were found on Mr. Vasquez.

[3] Officer Seabolt testified that prior to the search, Mr. Vasquez was under arrest only for obstruction. Dkt. 33 at 34:5-10; 38:25-39:3. After the search had begun, Officer Seabolt told Mr. Vasquez that he was being arrested for obstruction and possession of drug paraphernalia. Dkt. 25 (07:28-07:35).

Seabolt ignored Mr. Vasquez's statement, but instead asked Mr. Vasquez if he had a medical marijuana card, to which Mr. Vasquez responded affirmatively. *Id.* (06:09-06:12). Mr. Vasquez offered to retrieve the card from the house he was parked in front of. *Id.* (06:13-06:16). Officer Seabolt denied the request. Neither Officer Seabolt nor any other officer conducted any type of a field sobriety test on Mr. Vasquez who was coherent, responsive, and, based on video evidence, exhibited no signs of intoxication.[4] Dkt. 33 at 43:2.

After speaking with Mr. Vasquez, Officer Seabolt returned to the car to begin his search and discovered that the doors were locked. Dkt. 35 (06:30-06:35). He then located the keys on the street behind the car where the scuffle with Mr. Vasquez had occurred and unlocked the car. *Id.* (06:35-06:45). Several officers searched the entire car and found drugs, drug paraphernalia, a firearm, and a locked box. The officers later obtained a search warrant for the locked box.

II.

There are several significant factual discrepancies between Officer Seabolt's testimony, the Government's characterization of the events, and what was shown on the video. First, Officer Seabolt testified that he was standing outside of the car for five minutes before he interacted with Mr. Vasquez. Dkt. 33 at 10:14-16; 23:19-22. But as the video demonstrates, Mr. Vasquez had already been removed from the car, tackled to the ground, and placed in the back of the patrol car by the time Officer Seabolt's body worn camera had been on for five minutes. Officer Seabolt stood outside of the car for two minutes, at most, before knocking on Mr. Vasquez's window.[5]

---

[4] Officer Seabolt admitted that the only sign of intoxication was that Mr. Vasquez "appeared to be unconscious or sleeping." Dkt. 33 at 41:15-22. When asked whether Mr. Vasquez was under the influence of any type of intoxicant, Officer Seabolt responded that he "never conducted any standardized field sobriety testing." *Id.* at 42:24-43:2.

[5] Officer Seabolt stated that he had reviewed the video prior to the hearing, yet still maintained that he stood outside of the car for five minutes when asked to clarify the timeline of events. Dkt. 33 at 23:23-24:2.

Second, Officer Seabolt exaggerated the number of times he knocked and the time that passed between the knock and Mr. Vasquez's response. Officer Seabolt said that he had been knocking for five minutes, but in reality had only knocked once. Defense counsel asked Officer Seabolt how long it took to get a response from Mr. Vasquez after he knocked, and Officer Seabolt stated five minutes. Dkt. 33 at 23:14-22, 31:2-7. As the video demonstrates, only six seconds pass between Officer Seabolt's initial knock and the opening of the car door.

Third, the Government suggests that Mr. Vasquez was "unconscious"[6] because Officer Seabolt allegedly had difficulty waking him up and getting his attention. Dkt. 27 at 2. At the hearing, the Government claimed "Mr. Vasquez [was] slumped over and not responding while Officer Seabolt [was] standing right beside him shining a flashlight into his eyes for several minutes ...." Dkt. 33 at 59:6-12. There is no evidence that Mr. Vasquez was unconscious. The video shows that Officer Seabolt briefly shined the light through the front window, but he certainly was not shining the light in Mr. Vasquez's eyes, nor was he making any effort to get his attention before the backup officer arrived. *Id.* at 25:5-8. And as Mr. Vasquez stated in the video, Mr. Vasquez responded immediately to Officer Seabolt's first and only knock. Further, Mr. Vasquez's demeanor after the door was opened was not consistent with a claim that he was unconscious. The Court declines to credit Officer Seabolt's testimony that Mr. Vasquez was unconscious because it is inconsistent with the objective evidence shown on video.

III.

The Fourth Amendment guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Reasonableness under the Fourth

[6] The Government conflates the terms "sleeping" and "unconscious" throughout its brief and at the hearing, but they undoubtedly carry different connotations. Officer Seabolt stated that Mr. Vasquez appeared to be either asleep or unconscious, but the only basis for the opinion was that Mr. Vasquez was hunched forward. Dkt. 33 at 24:20-25.

Amendment 'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *United States v. King*, 990 F.2d 1552, 1559 (10th Cir. 1993) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). A warrantless search and seizure is per se unreasonable unless a valid exception to the Fourth Amendment's warrant requirements applies. *See, e.g., United States v. Lowe*, 999 F.2d 448, 451 (10th Cir. 1993) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971)).

The Government argues that the automobile exception justified the warrantless search of the car. The automobile exception permits officers to "search a car if they have probable cause to believe it contains contraband, regardless of whether a traffic violation has occurred[7] or a search warrant has been obtained." *United States v. Benard*, 680 F.3d 1206, 1210 (10th Cir. 2012). "[P]robable cause is a fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts." *Illinois v.* Gates, 462 U.S. 213, 232 (1983). The Court must consider whether "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *Gates*, 462 U.S. at 238).

Here, looking at the totality of the circumstances, the facts and circumstances known would not support a reasonable officer's belief that the car contained contraband or evidence of a crime. The Government argues that probable cause was established because Mr. Vasquez (1) was in the car "slumped down and seemingly unconscious" with the lights on around 3:00 in the morning; (2) had a glass pipe with burn residue in the center console; (3) reached down towards his feet before Officer Seabolt opened the door;

---

[7] Both parties agree that the interaction between Officer Seabolt and Mr. Vasquez was not initiated as a traffic stop.

and (4) walked quickly towards one of the houses.[8] Dkt. 27 at 8-9. This is not a complete or correct recitation of the facts known at the time of the search. But even if the Court limited its analysis to these facts, they do not give rise to the belief that the car contained contraband.

In arguing otherwise, the Government cites to several cases where probable cause was found in allegedly similar circumstances. Dkt. 27 at 9. In *United States v. Luna-Santana*, the encounter was initiated by a traffic stop and the defendant consented to the search of his car. 128 F. App'x 42, 47-49. During the consensual search, officers found a glass pipe in the back seat of the car, which "was sufficient to establish probable cause at least to continue the search of the vehicle's passenger area." *Id.* at 49 (citing *United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000)). Here, there was no traffic stop, Mr. Vasquez did not consent to the search, and the officers searched the entire vehicle—not just the passenger area—based solely on the pipe and Mr. Vasquez's behavior.

And in *United States v. Sparks*, the Tenth Circuit held that small bags in plain view "[c]ombined with [the officer's] knowledge of [the defendant's] prior drug-related activities, and the fact that [the officer] was there to execute an arrest warrant for [the defendant] which was issued as a result of his indictment for trafficking in methamphetamine" was sufficient to provide the officer with probable cause to search the truck. 291 F.3d 683, 692 (10th Cir. 2002). Probable cause in *Sparks* was not based solely on the bags in plain view, as the Government suggested in its brief. Dkt. 27 at 9. The facts here are glaringly different because Officer Seabolt had no knowledge of who Mr. Vasquez was when he parked behind his vehicle and had no basis to believe the car might contain drugs.

The Government also emphasizes the importance of Mr. Vasquez's allegedly furtive movement and evasive behavior in its probable cause

---

[8] All of these facts were identified by Officer Seabolt and are not observable on the video.

analysis. Dkt. 27 at 8-9 (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). The Court affords little weight to activities such as slumping, reaching down, and walking, which are not themselves suspicious. Officer Seabolt never stated that he saw Mr. Vasquez trying to hide items from his view. Furthermore, this type of behavior is merely a factor for the Court to consider. *Wardlow*, 528 U.S. at 124 (citations omitted); *Sibron v. New York*, 392 U.S. 40, 66-67 (1968). Whether that behavior suggests probable cause exists to search a car "must be based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125 (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981).

Prior to the search, Mr. Vasquez told Officer Seabolt that the knock surprised him; he also expressed concern because people had been breaking into cars in the area recently. Dkt. 25 (4:57-5:02). The video only shows Mr. Vasquez leaning forward following the knock. And when he got out of the car, Mr. Vasquez walked towards the back as instructed by Officer Seabolt. He does not appear to run from the officers at any point in the video.[9] It is reasonable for a person to be surprised when their car door is opened in the middle of the night. It is also reasonable for a person to comply with a request to walk toward the back of the car when instructed to do so. This behavior did not amount to the type of behavior that would give a reasonable officer belief that the car contained contraband. *United States v. Douthard*, No. CR-23-444-G-1, 2024 WL 3681468, at *7 (W.D. Okla. Aug. 5, 2024) (finding that the defendant's evasive behavior, provision of a false name, and attempted flight did "not constitute probable cause to believe that illegal drugs, illegal guns, or other evidence of reasonably suspected criminal activity" were in the defendant's hotel room or car).

The Government asserts that the pipe, which was in plain view, supports the conclusion that the car contained contraband. Dkt. 27 at 8. The

[9] The Government acknowledges that, at most, Mr. Vasquez "walk[ed] quickly towards one of the houses." Dkt. 27 at 9.

Court disagrees. Officer Seabolt testified that the pipe could be used to smoke either methamphetamine or marijuana. Dkt. 33 at 29:8-25. Officer Seabolt also stated that, based on his prior experience, the fact that Mr. Vasquez was asleep would have been inconsistent with behavior he would expect from someone who had consumed methamphetamine. Dkt. 33 at 44:22-45:4. And in Oklahoma, the medicinal use of marijuana is legal so long as the individual has a state-issued medical marijuana patient license. Okla. Stat. tit. 63, § 420. Before the officers searched the car, Mr. Vasquez told Officer Seabolt that he had a medical marijuana card and asked if he could retrieve it. The pipe itself does not give a reasonable officer reason to conclude that contraband, either alone or in combination with Mr. Vasquez's behavior, will be found in the car.

Additionally, Mr. Vasquez was immediately responsive to Officer Seabolt's first and only knock. But the door was opened before Mr. Vasquez could verbally respond to Officer Seabolt. The body worn camera footage shows that Mr. Vasquez was steady on his feet and never slurred his words. He was responsive to the officers' questions and asked questions of his own. This behavior is not consistent with the behavior of someone who has recently used illegal drugs.[10] There was no evidence that Mr. Vasquez was impaired other than Officer Seabolt's initial impression that Mr. Vasquez was slumped over and his belief—which is inconsistent with video evidence—that Mr. Vasquez did not respond immediately to his knocks. Mr. Vasquez's conduct was not that of an intoxicated person, as evidenced by the fact that none of the officers felt the need to conduct a standard field sobriety test.

The Government argues that Officer Seabolt was not obligated to "'rule out [Mr. Vasquez's] innocent explanation for suspicious facts.'" Dkt. 27 at 10 (quoting *D.C. v. Wesby*, 583 U.S. 48, 61 (2018)). But where, as here, an officer is provided with facts that contradict his supposition that contraband might be found in the car, he cannot ignore them. *See, e.g., Ross v. City*

[10] Officer Seabolt testified that, although there was a "slight smell," it did not smell like someone had recently smoked marijuana in the car. Dkt. 33 at 37:10-15.

*of Jackson*, 897 F.3d 916, 921 (8th Cir. 2018) ("An officer need not conduct a mini-trial before making an arrest but it cannot be said that even arguable probable cause is present where a minimal further investigation would have exonerated the suspect." (quotations and citation omitted)); *see also Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ("An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." (citation omitted)); *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) ("As a corollary ... of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause."). *Wesby* instructs the court to ask "whether a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a 'substantial chance of criminal activity.'" 538 U.S. at 61 (quoting *Gates*, 462 U.S. at 244 n.13).

Officer Seabolt was presented with information which would lead a reasonable officer to believe that Mr. Vasquez was not unconscious in the car; that he could legally possess the pipe and marijuana; and that he was not impaired at the time of arrest. Although this information is enough alone to dispel any potential probable cause the officers might have had to search the vehicle, any one of the officers could have also conducted a field sobriety test and confirmed (or disproved) what the evidence showed: That there was no basis for suspecting that Mr. Vasquez was using, or had recently used, drugs.[11]

Viewing the totality of the circumstances known at the time of the search through the lens of a reasonable officer, the Court finds that there was not probable cause to believe that Mr. Vasquez's car contained contraband.

---

[11] After the search began, Mr. Vasquez offered to take a field sobriety test. Dkt. 25 (18:52-19:04).

The automobile exception does not justify the warrantless search based on the facts of this case.

IV.

The warrantless search likewise cannot be classified as a valid search incident to a lawful arrest.[12] Officers may search a car's passenger compartment "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)). At the time the search began, Mr. Vasquez had been arrested for obstruction, but Mr. Vasquez appeared to be compliant with Officer Seabolt's commands. Further, the officers could not reasonably believe that evidence relevant to the crime of obstruction would be found in Mr. Vasquez's car. The Government also asserts that Mr. Vasquez was in violation of Okla. Stat. tit. 47, § 11-902(A)(3) at the time of his arrest, which criminalizes physical control of a motor vehicle while intoxicated. But as discussed above, there was not probable cause to believe that Mr. Vasquez was intoxicated. Accordingly, there was no lawful arrest upon which to base a warrantless search.

V.

Although not addressed in either party's brief, the Court inquired at the evidentiary hearing as to the applicability of the community caretaker exception. "[P]olice officers are not only permitted, but expected, to exercise ... 'community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993) (quoting *Cady v. Dombrowski*, 413 U.S. 433 (1973)). Under this role, "officers may effect a brief non-investigatory detention in the exercise of their community caretaking functions, regardless of suspected criminal activity, when articulable facts indicate the need 'to assure the safety of the public and/or the

[12] This theory was not addressed in the briefing, nor at the evidentiary hearing.

individual.'" *Novitsky v. City of Aurora*, 491 F.3d 1244, 1253 (quoting *King*, 990 F.2d at 1560).

Instructive here is *United States v. Morgan*, 71 F.4th 540 (6th Cir. 2023). In *Morgan*, the officer noticed the defendant seemingly passed out in the driver's seat of a running car. *Id.* at 541. The court held that the officer exceeded his community caretaker role when he opened the door "[w]ithout first trying to arouse Morgan by knocking on the door or shining a light in the car." *Id.* at 542. The Sixth Circuit stated that:

> Concerns about the health of a driver by themselves generally do not permit the unannounced opening of a car door. The scope of any search or seizure must reasonably match its function, and concerns about the health of a driver generally do not stand in the way of announcing oneself or otherwise trying to alert the driver before suddenly opening a car door.

*Id.* at 545 (citing *United States v. Lewis*, 869 F.3d 460, 464 (6th Cir. 2017)). The court acknowledged that concern of intoxication or overdose permitted the officer to check on the driver, but that there were "myriad, less intrusive paths available to him for addressing his concerns" such as "turning on the police car's emergency lights; shining a flashlight into Morgan's face; calling out to Morgan; or knocking on the window." *Id.* "A reasonableness approach does not require an officer to exhaust 'all conceivable alternatives,' but it does not give the officer carte blanche either." *Id.* at 546 (quoting *United States v. Rohrig*, 98 F.3d 1506, 1524 (6th Cir. 1996)).

Likewise, here, there are several other, less intrusive steps Officer Seabolt could have taken if he was concerned that Mr. Vasquez was intoxicated or unconscious. Instead of taking these steps, he briefly shined his light in the car, knocked once and immediately opened the door. He took no significant steps to get Mr. Vasquez's attention prior to opening the car door. To the extent Officer Seabolt's intervention was under the guise of his caretaker duties, it was likewise unreasonable, and thus unconstitutional.

VI.

Based on the finding that neither the automobile exception nor the community caretaker exception applies here, the warrantless search was unreasonable and in violation of the Fourth Amendment. Mr. Vasquez's motion to suppress [Dkt. 23] is GRANTED, and all evidence seized because of the unlawful search is suppressed.

DATED this 11th day of October 2024.

JOHN D. RUSSELL
*United States District Judge*